WILLIAM BARTELS ET AL., APPELLANTS, V. MINNIE SEEFUS ET AL., APPELLEES.

273 N. W. 485

FILED MAY 21, 1937. No. 30037.

*Joseph E. Strawn* and *Hugh A. Myers,* for appellants.

*Charles W. Haller, contra.*

Heard before ROSE, GOOD, EBERLY, DAY and CARTER, JJ., and HASTINGS and RINE, District Judges.

CARTER, J.

This is a suit brought by appellants for the partition of an 80-acre tract of land in Douglas county and for an accounting of the rents and 'profits of the property. Otto Timmermann, one of the appellees, answered and claimed that he had a life estate in the property for the reason that the property had been the homestead of his wife prior to her death, that the property was not subject to partition under the law, and asked the court that he be subrogated to the rights of a mortgagee of the property on a mortgage which he had paid off and on which the appellants and other owners of the remainder interest had failed to contribute. The trial court denied a partition of the premises, subrogated the appellee, Otto Timmermann, to the rights of the holder of the mortgage and entered a foreclosure decree for the amount due him. From this order, appellants brought the case to this court for review.

The record discloses that on March 1, 1915, Otto Timmermann and Mary Timmermann, his wife, purchased the property in question, each owning one-half and taking the title in both their names. In order to raise the necessary funds to pay for it, they borrowed $4,000 from George Schram and gave him a mortgage on the property. They lived upon the land until July 28, 1916, at which time Mary Timmermann died without issue. She left as her heirs at law two brothers and five sisters who now claim an interest in the property and ask that it be partitioned.

The evidence clearly shows that the property in question was the homestead of Otto and Mary Timmermann. They purchased the land and moved upon it with the expressed intention of making it their home. Neither of them owned any other real estate during the time they occupied the land. In *Dougherty v. White,* 112 Neb. 675, 200 N. W. 884,

we said: "The law is settled that, where a husband and wife reside upon a homestead and the wife dies, the homestead character of the land continues and the surviving husband, although he may have no children or dependents residing with him, may still retain the homestead as such." The trial court was clearly right in decreeing the homestead character of the property.

Under the statutes of this state, Otto Timmermann was entitled to take one-half of Mary Timmermann's interest in the property by virtue of having been her husband. Comp. St. 1929, sec. 30-101. In addition thereto, he was entitled to a life estate in the other half of the property herein involved by virtue of its homestead character. Comp. St. 1929, sec. 40-117. Otto Timmermann therefore owned the fee title to three-fourths of the property and a life estate in the remaining one-fourth. The heirs of Mary Timmermann were the owners of an undivided one-fourth interest, subject to the life estate of Otto Timmermann.

Appellants contend that Otto Timmermann removed from the state of Nebraska after the death of his wife and that this would affect his interests in the property. Appellants overlook the fact that the life interest of Otto Timmermann in the real estate of his deceased wife, due to its homestead character, was a fixed estate from the date of his wife's death. In *Shearon v. Goff*, 95 Neb. 417, 145 N. W. 855, we said: "During the life of the owner of the fee of a homestead the exempt character of the property depends upon its occupancy as a homestead; but upon the death of the fee-holding spouse a new title is created which vests, *eo instante*, in the survivor for life, individually and unconditionally, free from the right of the children of either spouse to a division of the income therefrom." From the date of his wife's death, Otto Timmermann was the absolute owner of a life estate in the undivided one-fourth interest hereinbefore referred to and it would remain unaffected by his subsequent removal from the state. *Cooley v. Jansen*, 54 Neb. 33, 74 N. W. 391.

The record discloses that Otto Timmermann, the owner

of the life estate, objected to and resisted the suit to partition the property. The trial court denied appellants the right to partition the property. This is in accord with the previous holdings of this court. In *Weddingfeld v. Weddingfeld,* 109 Neb. 729, 192 N. W. 227, this court, in construing the Nebraska statutes on the subject, sections 20-2170, 20-2190, 20-2193, Comp. St. 1929, held that, where there is an outstanding estate for life vested in a third person in the whole of the premises of which partition is sought, a remainderman cannot maintain an action in partition over the objection of the holder of the life estate. As to whether the trial court rightfully denied a partition of the premises, this case is controlling.

Subsequent to the death of Mary Timmermann, Otto Timmermann paid off the $4,000 mortgage that had existed as a lien against the whole property. Otto Timmermann now claims the right to be subrogated to the rights of the mortgagee for the purpose of enforcing contribution from the owners of the remainder interest in the undivided one-fourth share that went to the heirs of Mary Timmermann. Appellants concede that Otto Timmermann is entitled to his claimed right of subrogation, but contend that he is estopped by the provisions of the mortgage from claiming a homestead interest and the life estate springing from it. The $4,000 mortgage executed and delivered by Otto and Mary Timmermann on March 1, 1915, contained the following clause: "Together with all rights hereunto pertaining, and hereby release and waive all homestead and other statutory rights, covenanting that said premises are free from encumbrance, and that said mortgagors have a good title and a right to sell and convey the same and will warrant and defend the title against the claims of all persons." Appellants contend that the mortgagee, by the inclusion of this clause, held all the homestead rights in the property by conveyance. To this we cannot agree. The clause is nothing more than a waiver of any defense growing out of the homestead character of the property in case a foreclosure of the mortgage became necessary. There

never was a foreclosure and sale of the property under the mortgage to the mortgagee; therefore, the mortgagee never obtained any interest in the property other than that of lienor. The mortgage lien having been extinguished by payment, the mortgagee had no interest in the property thereafter. The homestead rights of Otto Timmermann were in no way affected by these transactions.

Appellants further contend that the claiming of a right of subrogation by Otto Timmermann for the purpose of enforcing contribution by the remaindermen places him in the position of a mortgagee in possession, which would require an accounting of the rents and profits. Otto Timmermann at all times after the death of Mary Timmermann was the absolute owner of the life estate, not by virtue of the mortgage, but under the statutes providing for the assignment and distribution of homestead property in this state. This being true, the homestead interest of Otto Timmermann remains unaffected by his claim to a right of subrogation. He, being at all times since the death of Mary Timmermann the absolute owner of the life estate, is not required to account for the rents and profits accruing since that time.

As we have heretofore said, the lands involved in this action were encumbered by a mortgage of $4,000 at the time of the death of Mary Timmermann. The duty of paying the interest upon that mortgage as it falls due is upon the life tenant. The duty of paying the principal amount of the mortgage is upon the owners of the fee title as of the date of the termination of the life estate. There can be no question that the life tenant can pay off the mortgage and demand contribution from the remaindermen where payment is necessary to protect his life estate. Where payment has been made by the owner of the life estate, such life tenant is entitled to be reimbursed by the remaindermen in the amount paid in their behalf, less such sum as will equal the present value of the annual instalments of interest he would have paid during his life if the mortgage had remained in existence for that period, with interest at

the legal rate on the residue from the date of payment. *Tindall v. Peterson,* 71 Neb. 160, 166, 98 N. W. 688, 99 N. W. 659.

Where the owners of the remainder interest fail to pay the amount owing to the life tenant after the life tenant has been compelled to pay off an existing mortgage to protect his interest in the property, the life tenant will be subrogated to the lien of the mortgage against the remainder interest to the extent of the amount due him, which he may foreclose, provided the payment of the mortgage was not made necessary by any default of his own. See *Downing v. Hartshorn,* 69 Neb. 364, 95 N. W. 801. In the case at bar, the mortgage was given on March 1, 1915, and it became due on March 1, 1920. Otto Timmermann paid the mortgage on March 1, 1920. It appearing that the mortgage was paid off by the life tenant at a time when it was due, and it further appearing that its payment was not made necessary by any default of the life tenant, a court of equity may properly grant a foreclosure of the lien.

The trial court denied a partition of the property, permitted the life tenant to be subrogated to the rights of the mortgagee in the mortgage that he paid off for the purpose of enforcing contribution from the remaindermen, determined the amount due in accordance with the rule hereinbefore set out in this opinion and granted a decree of foreclosure of the same against the interest of the owners of the remainder interest. In all this the trial court acted within well-established principles of law of this jurisdiction. The judgment of the trial court is correct and is

AFFIRMED.