KATHERINA METZGER, APPELLANT AND CROSS-APPELLEE, V. PHILLIP METZGER ET AL., APPELLEES AND CROSS-APPEL-LEES: GEORGE HERRING, APPELLANT AND CROSS-APPELLEE: FRANCIS P. GARVAN, CROSS-APPELLANT.

FILED MAY 17, 1922. No. 22027.

1. Homestead: FORFEITURE. Under the provisions of chapter 68, Laws 1917, a surviving spouse who elects to partition the homestead premises thereby forfeits all homestead rights in such premises, and the homestead then descends as other real property of which the deceased died seised.

2. Aliens: TITLE BY DESCENT. Section 6273, Rev. St. 1913, precludes a nonresident alien from acquiring or taking any title or interest in lands in this state by descent, devise, purchase, or otherwise, except as to such lands as are within the exceptions provided in that section.

3. Wills: DEVISE TO NONRESIDENT ALIEN. Where a citizen of the United States, by will duly probated, devised to certain nonresident aliens land which was not within any of the exceptions to section 6273, Rev. St. 1913, such nonresident aliens take no interest in such land, and the interest attempted to be devised to them must be regarded as intestate property, and descends as provided by law to the next of kin who are capable of taking.

APPEAL from the district court for Madison county:

WILLIAM V. ALLEN, JUDGE. *Reversed in part, and remanded, with directions.*

*Albert & Wagner,* for appellants.

*Arthur F. Mullen* and *M. B. Foster, contra.*

Heard before ROSE, DEAN, DAY and FLANSBURG, JJ.

DAY, J.

Karl Metzger, a citizen of the United States and an inhabitant of the city of Norfolk, Madison county, Nebraska, died testate on January 4, 1918. At the time of his death he was seised in fee simple of a quarter section of suburban farm land situated in Knox county in this state, and also two lots in the city of Norfolk, the two lots and the improvements thereon constituting his homestead. His will was duly probated. Among other bequests in the will he devised to his wife, Katherina Metzger, all of his real estate for life, and one-half of the remainder to the children of his brothers and sister, and the other half to the children of his wife's brothers and sisters. He left surviving him no issue or direct descendants. All of the devisees to whom the real estate was devised were nonresident alien enemies, except the widow, the children of the widow's brother Peter, the children of her sister Margaretha, and George Herring (a son of the testator's sister), who were citizens of the United States. George Herring is the only next of kin of the testator who is not a nonresident alien. The widow elected to take under the statute rather than by the terms of the will. Thereafter proceedings in partition were commenced by the widow, in which action all of the devisees under the will, as well as the alien property custodian, were made parties defendant. The real estate was duly sold by a referee appointed by the court. At the sale the town lots brought $4,600, and the farm lands $20,640, making a total of $25,240. After deducting the costs incident to the sale, there remained for distribution the sum of $23,247.66.

It was the claim of the widow that she was entitled to

receive one-half of the net proceeds of the sale of the real estate, and in addition thereto the value of her life estate in the homestead, which by stipulation of the parties was fixed at $1,090. In the distribution the trial court decreed that the widow was entitled to one-half of the net proceeds of the sale of the real estate, but denied her claim to the $1,090. From the decree denying her claim to the value of a life estate in the homestead the widow appeals.

The trial court further found that the nonresident alien enemies were entitled to receive one-third, and the other legatees one-sixth of the net proceeds of the sale of the real estate. After deducting from the share of the nonresident aliens an attorney's fee of $300 for the alien property custodian, and $3 costs, the court ordered the balance of $7,446.24 to be deposited by the clerk of the court in some bank or trust company, to be paid to the nonresident aliens when friendly relations were again resumed between the government of the United States and an established government of Germany.

It was the claim of George Herring that, in addition to the share willed to him, he was entitled to that portion of the proceeds of the sale derived from the farm lands which was devised to the nonresident aliens, and, from that part of the decree denying him the right to the share devised to the nonresident aliens in the farm lands, he has appealed.

The alien property custodian filed a cross-appeal from that part of the decree denying him the right to the possession of that part of the proceeds belonging to the nonresident alien enemies.

With respect to the claim of the widow for a share of the proceeds of the sale in lieu of her homestead rights, it must be determined in the light of statutory provisions existing at the time of the death of her husband. Chapter 68, Laws 1917, which was in force at the time, provides in substance that, where a homestead is selected from the separate property of either husband or wife, it vests on the death of the person from whose property it was selected in the survivor for life. This act contains a pro-

·viso, as follows: "Provided, further, that in case the surviving spouse * * * elects to partition the homestead premises, the homestead right of the survivor shall then terminate and the homestead premises·shall then descend as other real property of which the deceased died seised." The right of homestead rests purely upon statutory provisions, and is held subject to such conditions and limita· tions as the legislature may impose. By the act in ques· ·tion it is clear that the legislature intended that, when the surviving spouse elects to partition the homestead prem· ises, the homestead right becomes thereby forfeited, and the premises descend as other real property of which the deceased died seised. We think, therefore, that the trial court was right in holding that the widow took nothing by virtue of her claim in lieu of a homestead right.

In decreeing that the nonresident aliens who were dev· isees under the will took their proportionate shares of the net proceeds of the sale of the farm lands, as well as of · the city lots, the trial court followed the rule announced by this court in *State v. Thomas,* 103 Neb. 147. Since the decision of the trial court, however, this court has had oc· casion to again examine the question presented in the *Thomas* case, and has overruled the doctrine therein an· nounced, in so far as its principles are applicable to the present situation. In *State v. Toop,* 107 Neb. 391, this court held that section 6273, Rev. St. 1913, precludes non· resident aliens from acquiring any title to lands or any in· terest therein in this state by descent, devise, purchase or otherwise, except as affected by treaties or where the lands fall within the exceptions designated in the section. This section provides: "Nonresident ˎaliens and corporations not incorporated under the laws of the state of Nebraska are hereby prohibited from acquiring title to or taking or holding any lands or real estate in this state by descent, devise, purchase or otherwise." To this general sweeping prohibition subsequent provisions make exceptions, one of which only is applicable to the present situation, and which permits aliens to acquire real estate within the

corporate limits of cities and towns. This exception to the general provisions of the section has been sustained in *Glynn v. Glynn,* 62 Neb. 872. The evidence shows that the nonresident alien legatees are, and all times mentioned herein have been, subjects of the German Empire, and residents of the state of Baden. Our attention has not been called to any treaty limiting the application of our statute, and we assume that none exists.

In *Wunderle v. Wunderle,* 144 Ill. 40, a case was presented very similar to the case at bar, and it involved the construction of a statute almost identical with our own; and it was held that the treaties existing between the state of Baden and the United States and the treaties between the German Empire and the United States did not preclude the operation of the Illinois statute prohibiting nonresident aliens from acquiring an interest by devise in real estate. From what has been said, it is apparent that a part of the testator's estate must descend intestate, and, inasmuch as George Herring is the only next of kin, it would follow that the proportionate shares of the nonresident alien legatees arising out of the sale of the farm lands would by operation of law descend to him.

The question presented by the cross-appeal of the alien property custodian, that he is entitled to the possession of that part of the estate going to the nonresident alien enemies, has, in view of the fact that friendly relations have been restored between this country and Germany, become a moot question, and need not be determined. As we view it, no reason now exists why the proportionate shares going to the nonresident alien enemies may not be paid to them.

It follows from what has been said that the decree of the trial court should be modified to the extent that the proportion of the proceeds of the sale arising from the farm lands, which under the will went to the nonresident aliens, should be decreed to belong to George Herring. The cause is remanded, with directions to enter a decree in harmony

with the views herein expressed. The costs in the district court should be apportioned upon some equitable basis.

REVERSED IN PART, AND REMANDED, WITH DIRECTIONS.